UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM CARON, | Case No.: 3:21-cv-00259-ART-CLB |
| Petitioner | **MERITS ORDER** |
| v. | |
| TIM GARRETT,[1] *et al.*, | |
| Respondents | |

In William Caron's 28 U.S.C. § 2254 habeas corpus petition, he challenges his convictions of numerous counts of sexual assault of children under age 14, alleging that some of his convictions violate double jeopardy and that his trial counsel was ineffective. (ECF No. 11.) As discussed below, the Court denies habeas relief on the three grounds raised, declines to issue a certificate of appealability, and closes the case.

## I.    Background

A jury convicted Caron of ten counts of sexual assault against a child under the age of 14 and four charges of lewdness with a child under the age of 14. (ECF Nos. 34-4 through 34-17.) The state district court sentenced Caron to 35 years to life on nine of the sexual assault counts, 20 years to life on one sexual assault count, and 10 years to life on each of the lewdness counts, all to

---

[1] According to the state corrections department's inmate locator page, Caron is incarcerated at Lovelock Correctional Center. The department's website reflects that Nethanjah Breitenbach is the warden for that facility. At the end of this order, the Court directs the Clerk to substitute Nethanjah Breitenbach for prior respondent Tim Garrett, under, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

run consecutively. (ECF No. 34-45.) Judgment of conviction was entered on June 16, 2011. (ECF No. 35-2.) The Nevada Supreme Court affirmed Caron's convictions in November 2012. (ECF No. 36-5.) After an evidentiary hearing, the state district court denied his state postconviction habeas corpus petition, and the Nevada Court of Appeals affirmed that decision in April 2013. (ECF No. 43-12.) Caron then dispatched his original federal petition for mailing in June 2021. (ECF No. 5.) The Court granted his motion for appointment of counsel. (ECF No. 4.) The amended petition sets forth three grounds for relief:

> Ground 1: The convictions for counts 5 and 9 were redundant and violated the Fifth Amendment right against Double Jeopardy.

> Ground 2: Trial counsel was ineffective at sentencing for failing to obtain a psychosexual evaluation in violation of Caron's Sixth Amendment rights.

> Ground 3: Trial counsel failed to obtain a pretrial competency evaluation of Caron.

> (ECF No. 11.)

Respondents have answered the petition, and Caron replied. (ECF Nos. 67, 70.)

## II.    Legal Standards & Analysis

### a.  AEDPA Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the adjudication of the claim —

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

To the extent that the petitioner challenges the state court's factual findings, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *See, e.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a mere showing that the state court finding was "clearly erroneous." *Lambert*, 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### b. Double Jeopardy Claim

#### i. Background

Caron contends in ground 1 that his convictions for both counts 5 and 9 violated Double Jeopardy. (ECF No. 11 at 8-11.) He claims that the testimony of victim S.G. showed that the lewdness that was charged as count 9 was incidental to the sexual assault that was charged as count 5 because (he argues) she described it as all one incident that occurred in Caron's bedroom. The conduct described in count 5 was Caron placing his penis in S.G.'s mouth, and the conduct described in count 9 was forcing S.G. to use her hand to stroke his penis. (*See id.* at 9.)

S.G. testified that Caron was her uncle. (ECF No. 30-14 at 60-92.)[2] From about July to December 2009, when she was 12 years old, she would stay with

---

[2] The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court record. The Court summarizes the same solely as background to the issues presented in this case, and it does not summarize all such material. No assertion of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by this Court. Any absence of mention of a specific piece of evidence or category of evidence does not signify the Court overlooked it in considering Caron's claims.

Caron, his wife Carole, and his mother most weekends at their home in Stagecoach, Nevada. Caron and S.G. would routinely drive from Stagecoach to pick Carole up from work in Carson City. A few times he drove to a hill by the Carson River, telling her he wanted to show her the spot. She described three times that he had her get in the truck bed; once he pulled her pants down and placed his penis against her vagina and twice he put his penis inside her vagina. Another time when they arrived early to pick up Carole from work, Caron parked in a dark, isolated spot and had S.G. stroke his penis. Once on the way to pick up Carole, Caron pressured S.G. to put her fingers in her vagina. Then Caron also put his fingers in her vagina. The prosecutor asked her how many times "did these type of things happen," and she said every weekend that she was at Caron's house from July to December. (*Id.* at 73.)

When Caron, Carole and S.G. were home one day, Caron told S.G. he wanted to teach her how to drive a truck. He took her on a dirt road, had her get on the hood of the truck and he licked her vagina. S.G. testified about a time at Caron's house when they were in his bedroom that Caron had her get on the bed and he penetrated her vagina with his penis. She also testified about an incident where she and Caron were in his bedroom and he put on a pornographic DVD; she turned away when she saw what it was.

She stated that he bought her gum at a gas station and then told her that she had to touch his penis if he wanted the gum. She refused, but he got angry, so she closed her eyes and touched his penis.

On December 9, 2009, S.G. was at school with her twin sister, K.G. Her sister was very upset and was fighting with friends. S.G. insisted that her sister tell her why she was so upset. Her sister resisted and started yelling at S.G., but K.G. "finally caught her breath and told me that Uncle Billy keeps raping [her]." (*Id.* at 74.)

Caron was convicted of all six charges related to S.G. including four counts of sexual assault (Counts 4, 5, 6, and 7) and two counts of lewdness with a child under the age of fourteen (counts 7 and 9).

### ii. Testimony and argument relevant to counts 5 and 9

The two charges at issue are that Caron placed his penis inside S.G.'s mouth (count 5, sexual assault) and that Caron made S.G. stroke his penis (count 9, lewdness). (ECF No. 30-13.) Specifically related to counts 5 and 9, S.G. testified that once in Caron's bedroom he told her to put her mouth on his penis, which she did. (ECF No. 30-14 at 71.) She said:

> A: Um, we were in his bedroom. And he – he was laying on the bed. And he told me that I should put my mouth on his penis, uhm, and to go up and down in a motion.

> Q: Okay. And did you do that?

> A: Yes.

> Q: Did anything ever come out of his penis?

> A: Yes.

> Q: What was it?

> A: It was white liquid.

(*Id.* at 71-72.)

The prosecutor next asked her if Caron ever asked her to stroke his penis in his bedroom, and she said yes. (*Id.* at 72.) The prosecutor asked her to talk about that incident:

> Q: Did he ever ask you to stroke his penis in the bedroom?
>
> A: Yes.
>
> Q: Tell us about that.
>
> A: It was – I think it was, um, the day he asked me to put my mouth on his penis.
>
> Q: What happened?
>
> A: He told me before I put my mouth on his penis that I should stroke it up and down and, you know, put my hand on it and stroke it up and down, because it felt good to him. And like, this clear liquid came out. And he called it an orgasm.

(*Id.*)

Counts 5 and 9 charged as follows:

> Count 5: Sexual Assault Against a Child Under the Age of Fourteen, when Caron put his penis inside S.G.'s mouth in a bedroom at or near Stagecoach.
>
> Count 9: Lewdness with a Child Under the Age of Fourteen, when Caron directed S.G. to stroke his penis which S.G. did, while in a bedroom at or near Stagecoach.

During closing arguments, the prosecutor commented on the testimony on the two counts:

> Count 5, S.G., these are all the sexual assaults charged by fellatio in his bedroom. S.G. told you about another time on a weekend between July 2009 and December 9th, 2009. She told you how they were in his bedroom, the defendant was laying on the bed. S.G. told you how her uncle, the defendant, told her to put her mouth on his penis and go up and down in a motion, and

she told you she did that. And she told you how a white liquid came out of his penis.

ECF No. 33-3 at 153.

Count 9, S.G., the lewdness count by stroking the defendant's penis. S.G. told you about another time the defendant told her that before she put her mouth on his penis she should stroke it up and down, because she put her hand on it -- that she should put her hand on it and stroke it up and down, because it felt good. And she described how she did that. Clear liquid came out, he called it an orgasm.

*Id.* at 155-156.

Defense counsel argued that S.G. described only one incident:

Okay. On another incident she says she's in the bedroom, laying on the bed, she put his mouth on his penis and did an up-and-down motion and white liquid came out. What's critical here is she said it was the same day that she stroked his penis. She didn't testify to different locations, different time frames, whether it's all part of the same thing.

*Id.* at 183.

### iii.  Discussion

The Double Jeopardy Clause protects a defendant from cumulative punishments for multiple convictions of the same offense under separate counts. *United States v. Chilaca*, 909 F.3d 289, 295 (9th Cir. 2018) (Convictions for redundant acts violate the Double Jeopardy Clause, because it "prohibits the imposition of multiple punishments for the same offense."); *Ball v. United States*, 470 U.S. 856, 864-65 (1985) (defendant's conviction for both receiving a firearm and possessing that firearm violated Double Jeopardy). The "*Blockburger* test" has long been applied "to determine whether there are two

offenses or only one, [and the inquiry] is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States* 284 U.S. 299, 304 (1932). "[W]here two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Whalen v. United States*, 445 U.S. 684, 691-692 (1980); *see also Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ball*, 470 U.S. at 861.

Upholding the two convictions, the Nevada Supreme Court held that under the *Blockburger* test the convictions for both lewdness and sexual assault did not violate Double Jeopardy. (ECF No. 36-5 at 6-7) (citing *Blockburger* and *Salazar v. State*, 70 P.3d 749, 751 (Nev. 2003).) The court concluded that the two convictions were based on separate incidents that occurred close in time:

> In this case, count 5 was based [on] forced fellatio in the bedroom of Caron's Stagecoach house during a six-month time period, and count 9 was based on forced masturbation at or near the Stagecoach house during the same six-month time period. These charges involve different conduct and the evidence indicates that the conduct occurred at different times on the same day. Thus, we conclude that the Double Jeopardy Clause does not prohibit convictions for counts 5 and 9.

(*Id.*)

Here, there is no dispute that the offenses at issue are separate offenses under *Blockburger* because each contains an element not required by the other. The elements of Sexual Assault against a Child Under the Age of Fourteen are: subjecting another person under the age of fourteen to sexual penetration or forcing another person to make a sexual penetration on himself or another,

against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his conduct. NRS 200.366. The elements of Lewdness with a Child Under the Age of Fourteen are: willfully and lewdly committing any lewd or lascivious act on another person under the age of fourteen, other than acts constituting the crime of sexual assault, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of that child. NRS 201.230.

Sexual assault requires sexual penetration, which is not an element of lewdness with a minor. Lewdness with a minor requires the intent to arouse, appeal or gratify that person or the victim's sexual desires, which is not an element of sexual assault. Importantly, the offense of lewdness with a minor excludes acts constituting sexual assault. NRS 201.230(1). So under Nevada law, one sex act cannot violate both statutes. *Braunstein v. State*, 40 P.3d 413, 421 (Nev. 2002) (Nevada law considers a conviction for a lewd act that occurs incidental to the sexual assault to be redundant of a conviction for the sexual assault and courts will "reverse redundant convictions that do not comport with legislative intent.") Where the lewd act is incidental to the sexual penetration, however, the lewdness conviction is "impermissible punishment." *Ball*, 470 U.S. at 865. *See Crowley v. State*, 83 P.3d 282, 295-96 (Nev. 2004) (The related acts of touching the victim's private parts outside the clothes, followed by a touching of the genitals, followed by the performing of oral sex, together constitute one sex act because the lewd acts "were incidental to the

sexual assault," and the conduct cannot support a separate lewdness conviction.) *See also*, *Ebeling v. State*, 91 P.3d 599, 601 (Nev. 2004); *Gibbs v. LeGrand*, 2018 WL 2164861, *9-11 (May 10, 2018).

Caron argues that while the Nevada Supreme Court correctly cited *Blockburger*, it based its decision on an unreasonable application of the facts from the trial court record. (ECF No. 70 at 6-9.) That court held that the lewdness and sexual assault counts arose from separate incidents that occurred on the same day of forced fellatio and forced masturbation. (ECF No. 36-5 at 6-7.) This is not an unreasonable determination of the facts based on S.G.'s trial testimony. Caron relies on a single phrase of the victim's testimony: "He told me before I put my mouth on his penis that I should stroke it up and down. . . ." (ECF No. 30-14 at 72.) But a juror could have reasonably understood her full testimony, as quoted above, to describe two separate incidents. To understand the victim to say that, on the same day, Caron had her stroke his penis because it felt good until he ejaculated and also had her perform oral sex on him until he ejaculated is not an unreasonable determination of the facts. (*See id.* at 71-72); *see also Wright v. State*, 799 P.2d 548, 549-550 (Nev. 1990) (Where the testimony of the victim established that between the attempted and completed assaults, Wright stopped and waited while a car passed, the court concluded that the facts supported separate convictions for separate acts, even though the acts were the result of a single encounter and all occurred within a relatively short time); *Townsend v. State*, 734 P.3d 705, 710 (Nev. 1987) (The court affirmed separate convictions for

fondling a victim's breasts and digitally penetrating the victim's vagina, holding that because "Townsend stopped [fondling the child's breasts] before proceeding further," a separate act of lewdness occurred.) The jury also heard defense counsel's argument that the testimony was unclear and that the lewdness was incidental to the sexual assault.

Under AEDPA's deferential review, the Court concludes that the Nevada Supreme Court's decision on federal ground 1 was not based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). And Caron acknowledges that the decision was not contrary to, nor involved an unreasonable application of, clearly established U.S. Supreme Court law. *Id.* The Court, therefore, denies federal habeas relief as to ground 1.

### c. Ineffective Assistance of Counsel Claims

Grounds 2 and 3 allege that Caron's trial counsel was ineffective. Ineffective Assistance of Counsel ("IAC") claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell

below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v.*

*Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is

whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

**Ground 2**

Caron argues that trial counsel ineffectively failed to obtain a psychosexual evaluation to present at sentencing. (ECF No. 11 at 11-14.) He asserts that such evaluation would have shown the court that, had it run his sentences concurrently with a parole eligibility after 35 years, he would have been at a low risk to re-offend after serving that minimum time.

At the evidentiary hearing on Caron's state postconviction habeas petition, his trial counsel testified that she and Caron had discussed whether to obtain a psychosexual evaluation prior to sentencing. (Exh. 243 at 4-140.) Counsel explained that all of the sentences were mandatory and that with such long minimum sentences a new evaluation would have to be done closer to Caron's parole eligibility anyway. (*Id.* at 48-50.) Weighing whether to have him evaluated prior to sentencing, counsel said she was worried that with five victims the evaluation would not be favorable to Caron. There were also other allegations involving at least one other victim that the defense had successfully moved to exclude. Counsel did not want to risk further allegations surfacing in the course of the evaluation; she felt that would negatively impact Caron's appeal. She and Caron discussed the issue and agreed that they did not want to have a psychosexual evaluation done prior to sentencing. Counsel acknowledged on cross-examination that she could have had an evaluation

completed and "buried it" or not presented it to the court if it was unfavorable. (*Id.* at 75-81.) Counsel described the trial as excruciating and heartbreaking. While she hoped for some concurrent sentences, based on her experience it was her opinion that the court would not have sentenced Caron concurrently on all 14 counts even if she had been able to obtain a psychosexual evaluation that showed a low risk of recidivism.

Dr. Martha Mahaffey completed a psychosexual evaluation of Caron for his state postconviction proceedings in 2016 and testified at his state postconviction evidentiary hearing. (*See* ECF No. 39-1 at 6-99.) When Caron has served 35 years, he will be age 69. Dr. Mahaffey testified that out of a routine sample of sex offenders of that age less than 2% re-offended within five years, and that typically a re-offense is more likely to occur within the first five years. (*Id.* at 14-15.) She therefore concluded that "his chances are extremely, extremely good that he would not reoffend." (*Id.*) Caron also disclosed to her during the evaluation that another girl had given him 20-30 bare, skin-to-skin lap dances when she was 15 or 16 years old and that he had also fondled her genital area. (*Id.* at 24; ECF No. 38-4 at 116-117.)

The Nevada Court of Appeals concluded that Caron's trial counsel testified credibly that she did not think a psychosexual evaluation would have benefitted Caron at sentencing:

> At the evidentiary hearing, counsel stated that she did not wish to have Caron undergo a psychosexual evaluation prior to the sentencing hearing because she did not believe it would be beneficial to him. The district court concluded counsel's testimony was credible. The district court also found Caron revealed in the

evaluation he undertook during the postconviction proceedings that he may have engaged in lewd behavior with another teenager and, therefore, such an evaluation would not have been helpful to him. Substantial evidence supports the district court's findings. In light of the circumstances in this case, Caron failed to demonstrate counsel's decision not to pursue a psychosexual evaluation for Caron prior to sentencing fell below an objective standard of reasonableness. [*See Ford v. State*, 784 P.2d 951, 953 (Nev. 1989).] Caron also did not demonstrate a reasonable possibility of a different outcome had counsel sought a psychosexual evaluation for Caron. Therefore, we conclude that the district court did not err by denying this claim.

(ECF No. 43-12 at 4-5.)

Caron has not shown that his trial counsel was deficient, and he cannot show prejudice. His counsel credibly explained her tactical conclusion that a psychosexual evaluation prior to sentencing might not be helpful to Caron and might even prove detrimental. Counsel knew of other allegations and had successfully kept them excluded from the trial. Caron's own testimony as well as the testimony of Dr. Mahaffey at the state postconviction evidentiary hearing demonstrated that his counsel was correct that additional, damaging information might surface during the psychosexual evaluation. The state court sentenced him to the maximum time. But this Court must presume that counsel's conduct was within the wide range of reasonable professional assistance. *Yarborough*, 540 U.S. at 5. Under the doubly deferential review of an ineffective assistance claim already rejected by the state courts, Caron has not shown his counsel unreasonably or ineffectively decided against the evaluation. He has not shown any probability of persuading the judge to sentence him concurrently on all of the 14 counts with five minor victims. Caron has not demonstrated a reasonable probability of a different result at

sentencing. He, therefore, has failed to demonstrate that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland.* 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 2.

**Ground 3**

Caron argues that because his counsel failed to obtain a competency evaluation he was tried, convicted, and sentenced while incompetent. (ECF No. 11 at 14-25.) NRS 178.400(1) provides that a person may not be tried or convicted while incompetent. Under the statute, "incompetent" means that the person does not have the present ability to:

(a) Understand the nature of the criminal charges against the person;

(b) Understand the nature and purpose of the court proceedings; or

(c) Aid and assist the person's counsel in the defense at any time during the proceedings with a reasonable degree of rational understanding.

NRS 178.400(2).

Caron testified at his state postconviction evidentiary hearing that he attempted suicide twice in three days after first talking with detectives about the charges. (ECF No. 38-4 at 26-152.) He said he didn't recall whether his counsel had ever asked him about his mental health. He was in pre-trial custody a couple of months before trial when his wife was killed in an auto accident. He wrote his counsel a letter telling her: "I wasn't ready to go to trial, that this has hurt me really bad." (*Id.* at 43.) He was not on any medication during trial; he said during trial he was really depressed, didn't care what happened, didn't want to talk to anyone, and just wanted everything to be over

with. He thought about instigating a situation where a bailiff would shoot him. He said he believed if he had been medicated, he would have been able to assist his counsel at trial. He said he did not speak with his counsel much during trial. On cross-examination he stated that it wasn't his mental health status that prevented him from speaking with counsel during trial but that his pride prevented him. He agreed that if he had not let his pride get in the way he could have spoken with his counsel about his case in more depth.

Caron's trial counsel testified at the state postconviction evidentiary hearing that she was aware that he had attempted suicide twice in a matter of days soon after detectives began to question him about the allegations. (ECF No. 40-1 at 63-144.) About a year later he wrote counsel from jail saying that he was bipolar and needed medication. His counsel never had any reason to question that Caron was competent to stand trial; if she had she would have raised that to the court. Counsel said Caron extensively assisted her in his defense, including identifying several helpful witnesses. He told her one family made up the charges because they had embezzled his tax return and another family made up the charges because they were in a contentious divorce and did not want Caron involved in their daughters' lives. Counsel was able to verify the embezzlement accusations and the difficult divorce. He told her that the jail informants were lying; they had information about his case because they had read some legal materials in the cell. Caron spoke normally, rationally, and behaved appropriately at trial. Counsel saw no sign that he was not legally competent; in fact, he wanted to proceed to trial. She pointed out that whether

a client needs medication is not the same question as whether he is competent.

When Caron wrote counsel the letter after his wife was killed telling her that it

would be very difficult for him to stand trial at that time, she went to visit him

in jail. He never told her when they met that he wanted his trial continued;

what he really wanted was to be allowed to attend his wife's funeral. Counsel

stated that she never saw Caron trying to incite the bailiff during trial in any

way, but that "[Caron] was very decent with the police officers, they were very

decent with him." (*Id.* at 95-96.)

The Nevada Court of Appeals rejected this claim:

> . . . Caron argued that his trial counsel was ineffective for failing
> to investigate his mental health or request a competency
> evaluation. At the evidentiary hearing, trial counsel testified that
> Caron did not give her reason to suspect he might be incompetent
> or that she should request he undergo a competency evaluation.
> Rather, counsel testified that Carol was actively engaged in
> preparing his trial defense and that he did not appear to have any
> troubles understanding the proceedings against him.
>
> The district court found that counsel's testimony was credible
> and that the evidence presented at the evidentiary hearing
> demonstrated that Caron had the ability to consult with his
> attorney with a reasonable degree of rational understanding and he
> understood the proceedings against him. *See Melchor-Gloria v.
> State*, 660 P.2d 109, 113 (Nev. 1983)(stating test for competency).
> The district court also found that the testimony and evidence
> Caron presented in an attempt to demonstrate that he was
> incompetent during his trial and sentencing was not credible.
> Substantial evidence supports the district court's findings.
> Accordingly, Caron failed to demonstrate his counsel's
> performance fell below an objective standard of reasonableness or
> a reasonable probability of a different outcome had counsel
> investigated Caron's mental health and requested a competency
> evaluation. Therefore, the district court did not err in denying this
> claim.

(ECF No. 43-12 at 3.)

Caron has not shown deficiency, and he cannot show prejudice. He has not demonstrated a reasonable probability of a different result had his counsel sought a competency evaluation before trial. Counsel credibly testified at the postconviction hearing that she had no reason whatsoever to question Caron's competence and she testified with specificity about how he actively and extensively assisted in his own defense. Caron's vague, self-serving testimony that he would have been better able to assist in his defense had he been on medication lacked credibility. And, in fact, he also stated that other factors such as his pride interfered with his relationship with counsel. He, therefore, has failed to demonstrate that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 3.

The petition is, therefore, denied in its entirety.

### III.    Certificate of Appealability

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has sua sponte evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Caron's petition, the Court finds that none of those rulings meets the *Slack* standard. The Court therefore declines to issue a certificate of appealability for its resolution of Caron's petition.

## IV.    Conclusion

It is therefore ordered that the first-amended petition **(ECF No. 11) is DENIED**.

It is further ordered that a certificate of appealability will not issue.

The Clerk of Court is directed to: (1) substitute Nethanjah Breitenbach for respondent Tim Garrett, (2) enter judgment accordingly and close this case.

Dated this 29th day of September 2025.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE